## WM. R. MORRIS *v.* DEVOU AND ROCKWOOD ET AL.

### (No. 8,053.)

1. Where a mortgagor is in possession and allowed to carry on his business and sell from the stock of goods covered by a chattel mortgage, such mortgage will be void as against creditors.
2. The attendance of the mortgagee and his permission to the mortgagor to make a sale and transfer of the entire stock to a third party is not equivalent to a taking possession of the goods by the mortgagee.

GENERAL TERM.—Proceeding in error to reverse a judgment of the special term of March, A. D. 1858, rendered by GHOLSON, J., against the plaintiff in error. The errors claimed were that the finding of the court was against the law and the evidence. The action below was in the nature of replevin, to recover possession of certain goods and chattels. Both parties claimed under a *common source* of title, viz: Goodloe Pendery and wife. The plaintiff as mortgagee, the defendants, Devou & Rockwood, as judgment creditors.

The facts, as they appeared in the pleadings and evidence, were these: Pendery and wife as early as January, 1856, were engaged in a retail fancy and millinery business at store, No. 76 Fifth street, and were in the habit of giving their joint notes for purchases. Morris made them some advances in money, and became responsible as surety upon their paper. To indemnify him they gave him a mortgage upon their stock in trade. They continued in the business as usual until October, 1856, when a fresh supply of goods was bought, the old mortgage was canceled and replaced by another covering the entire stock. The business continued as before until October, 1857, when another supply of goods was obtained. The second mortgage was surrendered, and a new one taken as before, covering the entire stock. This mortgage was dated October 8, 1857, and was filed in the recorder's office on the same day. It recites that Morris had become indorser and guarantor for Pendery and wife upon and for certain liabilities and promissory notes, amounting in all to about $4,000, and is conditioned that if said Pendery and wife shall, as the same become due, pay all notes, debts and liabilities for which said Morris is indorser or guarantor for them or either of them, and all renewals thereof, and all notes and guaranties that shall be made by said Morris, etc., then the instrument shall become void. Provided, that until default shall be made in the payment of any of said notes, it should be lawful for said Pendery and wife to " retain possession of the said chattels and effects

and to *use and enjoy* the same without any denial or molestation by the said Morris or his representatives."

Nothing was said between the parties further than the terms of the mortgage expressed or implied. What the value of the stock then was does not appear. Pendery and wife conducted business in all respects as though no mortgage had been made. Selling out the stock and receiving the proceeds with the knowledge of Morris and without objection, until December 22, 1857, when Pendery with the assent of Morris made an arrangement for the sale of the entire stock to one Ferris, upon what terms does not appear. But it was to have been *consummated* on January 1, 1858. It was not then consummated, but the stock was still in the possession and under the control of Pendery and wife until the 6th of January, when that portion of it now in controversy was levied upon by the defendant Moore by virtue of an execution, in favor of Devou & Rockwood against Pendery and wife, issued upon a judgment in their favor rendered by Squire Chidsey, the 30th November, 1857, for $76 and cost, and he took possession under his levy. Afterward Ferris came to complete his purchase but found the goods in possession of the constable. At this time the liability of Morris for Pendery and wife was about $3,000. He had never taken possession of the goods, nor exercised any act of ownership over them except in uniting in the agreement for sale made with Ferris, and on a former occasion refusing to ratify a similar sale made by Pendery. At what time the debt to Devou & Rockwood was *contracted* does not appear; nor what was the previous condition of Pendery further than that on a former execution, issued on the judgment of Devou & Rockwood, a return had been made of " no *goods and chattels* found," etc.

On this state of facts the court found that the right of property was in the defendant Moore for the use of Devou & Rockwood to the amount due upon the execution, and accordingly entered up judgment in their favor for said

sum and interest being in all $186; which finding and judgment are claimed to be contrary to law and evidence.

*Tilden & Rairden,* for plaintiff in error.

*W. M. Dickson,* for defendants in error.

SPENCER, J., gave the decision of the court.

It is impossible to distinguish this case, in *principle* if in *letter,* from that of Goodenough *v.* Harris, decided by this court in general term, October, 1855, or from that of *Collins* v. *Myers,* 16 Ohio, 547. In the latter of which it was held, that a mortgage of a stock of goods, when possession was left with the mortgagor, accompanied with a *power of sale* in him, was void, not only as against judgment creditors, but as against a general assignment in trust for creditors; and in the former of which we held that, a similar mortgage leaving possession in the mortgagor, accompanied by a parol agreement authorizing the mortgagor to sell and apply the proceeds in payment of the mortgage debt, was void as against *subsequent* creditors, who had obtained judgment and levied upon the property mortgaged before any actual possession taken of it by the mortgagee. These cases were not predicated upon the ground of *fraud* in fact as between the parties. For in truth the transaction was considered to have been made in *good faith.* But upon the ground that the transaction was inconsistent with itself; that the *power of sale* enabled the mortgagor to strike down the security, at any moment, and was therefore inconsistent with the idea of security, but should rather be regarded as a *ward* to keep off *creditors.* So long then as this power exists, the mortgage, as against creditors, is *inoperative,* and the property may be taken in *execution;* as was said in the case of *Collins* v. *Myers,* for as much as the mortgagor might have satisfied and *paid off the debt,* so the creditor may take in execution and pay himself off, for it is against the policy of the law

that the debtor shall treat the security as existing or not at his *own option.*

There is nothing opposed to this doctrine in the still later case of *Chapman* v. *Weimer et al.,* 4 O. S. 481, where it was held, that such a mortgage was good, after the mortgagee had taken *possession,* as against a judgment creditor.

The substance of these decisions is, that taking the whole transaction together it amounts not to an *absolute* security as against creditors, but as an agreement for a security which becomes absolute upon the taking possession by the mortgagee, but until such *possession* is taken there is no such absolute security.

Here, it is in evidence :

1. That there had been two prior and similar mortgages upon the moving stock; that notwithstanding these mortgages the mortgagor continued in possession and sold without regard to them; that in the mortgages is contained an agreement that until default the mortgagor shall use and enjoy without denial or molestation by the mortgagee.

Now the only use and enjoyment that could be beneficial to the mortgagor was the right to sell, *i. e.,* to use as in times past.

We think that here is an express power in the mortgagors to sell.

2. If not, there is one clearly implied from the course of business pursued by the mortgagors, with the assent and knowledge of the mortgagee.

Lastly, The mortgagee never took possession and had no ownership at the time of levy.

The attempt to unite in the sale, though it amounted to a claim of ownership, was not the taking possession nor did it place the plaintiff in such a position as to render his security complete as against creditors seizing the property.

Judgment affirmed.